## The Chicago and Northwestern Railway Company

### *v.*

### Jonathan Peacock.

1. Trespass — *railroad company.* Where a railroad conductor forcibly expels a passenger from the cars, between usual stopping places on the road, because he refuses to pay his fare: *Held,* That it is unlawful, and that trespass will lie for the injury.

2. Same — *justification, what is not.* In such a case, where the passenger refuses to pay his fare, and informs the conductor that he will get off if he will stop the train, and when it stops refuses to do so: *Held,* That this does not authorize the conductor to forcibly expel him at a place other than a regular station.

3. New trial — *excessive damages.* Where a party sues a railroad company, for putting him off the cars, with force, at a place not authorized by law, and he recovers damages grossly in excess of the injuries received, the verdict of the jury should be set aside by the court trying the cause, and failing to do so, the judgment will be reversed that a new trial may be had.

Appeal from the Circuit Court of Winnebago county; the Hon. Benjamin R. Sheldon, Judge, presiding.

The opinion states the case.

Mr. James M. Wight, for the appellants.

Mr. George C. Campbell, for the appellee.

Mr. Justice Walker delivered the opinion of the Court :

The first question presented on this record is, whether an action of trespass will lie against a railroad company, where the conductor forcibly ejects a passenger, between stations on the road, because he refused to pay his fare.  It is urged that case is the proper remedy, and that trespass will not lie.  In the case of *The St. Louis, Alton & Chicago Railroad* v. *Dalby*, 19 Ill. 353, it was, after full argument, and upon mature deliberation, determined that the action of trespass would lie against such a company, for forcible injuries inflicted by their employees, while in the discharge of their duties in operating their road, upon a passenger.  And after reading appellants' argument in this case, we see no reason for dissatisfaction with the conclusion there announced, nor do we feel the least inclination to modify, or abridge it in its operation.  We believe the rule to be sound, and strictly in analogy to the principles of the common law, which is the base of our system of jurisprudence.

It is also urged that this case is clearly distinguishable from that, inasmuch as the plaintiff in that case was at no time in the wrong, while in this case, appellee placed himself in the wrong by refusing to pay his fare, when called for by the conductor.  We are not able to perceive that this creates or forms any well defined distinction in fact, and none in principle.  The facts slightly differ, but so slightly as to form no well grounded distinction.  In that case, the conductor wrongfully used force to eject a passenger from the train, after he had paid his fare, and because he refused to pay an extra charge for failing to procure a ticket, which he had applied for, but

could not obtain of the agent, and after the assault and ill usage, he paid the extra charge, and was permitted to remain on the train.

The thirty-fourth section of the general law regulating our railroads, declares that "if any passenger shall refuse to pay his fare or toll, it shall be lawful for the conductor of the train, and the servants of the corporation, to put him out of the cars at any usual stopping place the conductor may select." And this provision has been held to apply to all railroads in the State. This, then, renders it lawful to put a passenger from the cars at any usual stopping place, when he refuses to pay his fare, and, by implication, makes it unlawful to put such a passenger off at any other place. Then, when the conductor expelled appellee between stations on the road, he he did an unlawful act. And, in this, the two cases are alike. Trespass was maintained in Dalby's case, because he had done no act, or failed to perform any, which authorized the conductor to put him from the train at that or any other place; while in this case, appellee had done no act which authorized the conductor to eject him from the cars at the place where it was done. He failed to pay his fare when it was demanded, which authorized the conductor to require him to leave the train at a regular stopping place, and, at such a place, he would have been required to first request him to leave the cars, and, in case he refused, to then employ such force, and only such, as would be necessary, to remove him from the cars.

In Dalby's case, the road was held liable because the conductor used force where the law did not warrant it. In this case force was employed where the law prohibited it, and hence the two cases are alike. In this case, it is true, appellee refused to pay his fare, but the law had said that, for that, the conductor should not remove him from the train, except at a regular station. The law, so far from sanctioning the force used in this case, had, on the contrary, forbidden it. By the use of force in this case, in ejecting appellee between usual

places for stopping on the road, it was a trespass, and the road became liable for the trespass of its servants, precisely as in Dalby's case. Had the conductor stopped his train and ordered appellee to get off, and he, to avoid altercation, had obeyed, then, as no force would have been employed in wrongfully putting him from the train, case would no doubt have been the proper remedy. It will be observed, that the court in Dalby's case, in stating case, and not trespass, would lie, only refers to doing a lawful act in a careless and negligent manner, and not to the performance of an act which the law has prohibited, as in this case, with force and violence. What is there said, would apply to putting a passenger, who refuses to pay his fare, from the cars at a regular station. Because appellee had failed to perform a legal and moral duty, it did not authorize the conductor to take the law in his own hands, and, in violation of the statute, forcibly expel him at a place prohibited by the law.

It is next urged, that the conductor was warranted in what he did, because appellee said to the conductor, that if he would stop the train he would get off, as he had passed the station where he had intended to leave the train, and when it was stopped he refused to leave. While such conduct is highly improper, and is well calculated to try the patience of any conductor, and which would no doubt subject appellee to damages for the wrong, and may be a mitigating circumstance in the case, we can not hold that it was a justification of the acts of the conductor. The law had prohibited him from forcibly expelling appellee at that place, and the offer to get off there, which was retracted, did not amount to a license to use the force and violence employed in ejecting him.

It is insisted that the damages found by the jury are excessive, and so much so, as to require a reversal of the judgment. A careful examination of the evidence in the case, shows that appellee did not receive any serious and lasting injury ; his face was scratched, and the skin was abraded slightly, in one

or two places, on his limbs.    He, however, says he was kicked
and hurt.    Even conceding this to be true, he seems, the
next day, which was Saturday, and the next Monday, to have
been about, attending to his business.    It does not appear that
he was confined to his room even, much less being confined
to his bed, from the injuries; he does not appear to have lost
any time, or suffered pecuniarily from these injuries; he does
not seem to have been compelled to seek medical advice, nor
to have incurred any expense from his injuries.    And when
it is remembered that he committed the first wrong, by refu-
sing to pay his fare, and having proposed to get off if the
conductor would stop the train, and then refused when the
train was stopped, we think a thousand dollars damages are
excessive, and grossly excessive.    That sum was held to be so in
the cases of *The Chicago, Burlington and Quincy Railroad* v.
*Parks*, 18 Ill. 460, and *The Terre Haute, Alton and St. Louis
Railroad* v. *Vanatta*, 21 Ill. 188, and the judgment of the
court below, in each of those cases, was reversed for that reason.
It is true, that in this case there was more violence employed
than in either of those, but it seems to bear no proportion to
the verdict of the jury.

   It may be urged, that the life of appellee was endangered,
but it appears that if it was, it resulted from his effort to again
get upon the car after he had been expelled, and the train had
started.    He seems to have been ejected at a place some three
or four miles, only, from a station, and in the immediate
vicinity of a house, and in a settled neighborhood.    And
although in the night, and when the weather was cold, still
he does not seem to have suffered pain, injury to his health,
or any great inconvenience.    That he suffered indignity,
and some personal injury, there is no doubt, but when
we see that he did the first wrongful act, and when we consider
the extent of the injuries inflicted upon him, we are constrained
to say that we regard the verdict as excessive.    And while
railroads, like individuals, must be held to the performance

of every duty, they, at the same time, like individuals, are entitled to the protection of the law. And, in cases where they are parties, we will look to the circumstances in determining whether damages are excessive, which juries have found against them. Had this been a verdict against an individual, under the same circumstances, it would have appeared palpably excessive.

The court below erred in refusing to grant a new trial, and the judgment of the court below must be reversed, and the cause remanded for a new trial.

*Judgment reversed.*